UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-4 KOREY BRADLEY,

    Defendant.

Case No. 16-20307
Honorable Laurie J. Michelson

---

## ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [137]

---

The coronavirus pandemic has disrupted virtually every facet of human life. The operations at federal correctional institutions are no exception. The Milan Federal Correctional Institution, where Korey Bradley is presently incarcerated, suspended its Residential Drug Abuse Program because of COVID-19. So Bradley has been unable to complete the program. As a result, he was not released to a Residential Reentry Center on June 4, 2020, as he expected to be. In addition to this disappointment, Bradley is experiencing emotional distress from the recent loss of several family members as well as nasal passage issues from a prior gunshot wound. While the Court is sympathetic to Bradley's unfortunate circumstances, they are not "extraordinary and compelling" reasons that warrant a sentence reduction. Thus, his motion for compassionate release is DENIED.

## I.

From December 2012 through 2016, Bradley was involved in a conspiracy to distribute at least one kilogram of heroin and five kilograms of cocaine on the east side of Detroit. (ECF No. 108, PageID.598–599.) Bradley pleaded guilty on June 23, 2017, pursuant to a Rule 11 plea agreement, to one count of conspiracy to possess with intent to distribute and distribution of controlled substances. (ECF No. 108.) At age 31, this was Bradley's fourth drug conviction, and

1

he was under court supervision at the time of this offense. (Presentence Report, ¶¶ 30–32, 35.) Bradley was sentenced on November 22, 2017, to 48 months in prison (which involved a significant downward departure from the 151–188 months sentencing guidelines range). (ECF No. 125.)

Bradley began serving his sentence on March 1, 2018. (ECF No. 137, PageID.775.) He has been participating in the Residential Drug Abuse Program (RDAP) at FCI Milan and completed over 400 hours of class instruction. (ECF No. 137, PageID.768.) He is about 91 hours shy of completing the program. (ECF No. 143, PageID.835–836.) Had he completed the program, he would have been eligible to be released to a residential reentry center (RRC) on June 4, 2020. (ECF No. 137, PageID.768.) The Government further explains that Bradley would have had to remain at the RRC until March 28, 2021. (ECF No. 143, PageID.836.) And, says the Government, because Bradley must serve at least 120 days at a halfway house, the BOP does not have to transition him to one until November 28, 2020, to meet his projected release date. (*Id*.)

But after the coronavirus pandemic hit and inmate movement at Bureau of Prisons (BOP) facilities was restricted, the RDAP program was suspended, and Bradley has been unable to earn his full release credits. (ECF No. 137, PageID.768) As a result, he was not released to an RRC on June 4, 2020. Now, assuming Bradley earns all of his good time credits, his prison release date is not until July 2021. (ECF No. 135, PageID.762; ECF No. 143, PageID.836.) Without the credits, his projected release date is February 22, 2022. (ECF No. 137, PageID.768–769; ECF No. 143, PageID.836.)

On June 1, 2020, this Court received a letter from Bradley asking "for immediate release on home confinement" because he is "not a violent offender," he has "not been in any trouble at all while . . . in prison," and he "followed every rule when [he] was out on pre-trial release." (ECF

No, 133, PageID.757–758.) Bradley also referenced the death of his brother and cousin, the coronavirus crisis, and the lack of social distancing while being on constant lockdown with cellmates. (*Id.*)

The Court found that Bradley's request needed to be directed to the BOP. (ECF No. 135.) *See also United States v. James*, No. 15-255, 2020 U.S. Dist. LEXIS 69973, at *5 (D. Minn. Apr. 21, 2020) ("Although the First Step Act expanded release opportunities, courts have observed that 'it is BOP—not the courts—who decides whether home detention is appropriate. . . .'" (citations omitted)). But the Court also appointed counsel to determine whether any further action was warranted on Bradley's behalf. (*Id.*)

Through counsel, Bradley has now filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). (ECF No. 137.) Bradley maintains that as a result of a prior gunshot wound, he suffers from nasal drainage problems that he believes make him more prone to contract contagious diseases. (ECF No. 137, PageID.775.). This condition, says Bradley, combined with the suspension of the RDAP program and the need to be with his family following the loss of his brother and cousin, constitute extraordinary and compelling reasons for his immediate release from prison. (ECF No. 137, PageID.783.) The Government disagrees and opposes the motion. (ECF No. 137.) The motion is adequately briefed and does not require further argument. *See* E.D. Mich. LR 7.1(f).

## II.

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). As amended by the First Step Act, and upon exhaustion of administrative remedies or the

lapse of 30 days from the receipt by the warden of a request for compassionate release, 18 U.S.C. § 3852(c)(1)(A)(i) allows a court to reduce an inmate's sentence if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under § 3553(a) warrant a reduction.

## A.

The statutory exhaustion requirement is mandatory. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

Bradley claims that he sent a request for compassionate release to the warden on June 6, 2020. (ECF No. 137, PageID.781.) Bradley did not keep a copy and so, to be safe, his lawyer sent a follow-up request on June 18. (*Id.*) The warden says he never received Bradley's request and the prison could find no evidence in the email system of Bradley having sent one. (ECF No. 143, PageID.837–838.) But the warden does acknowledge receipt of counsel's request. (ECF No. 143, PageID.837.) And because 30 days would have lapsed before the Government's response was due, the Government does not appear to contest exhaustion. (ECF No. 143, PageID.838.) So the Court will address the merits.

## B.

Bradley must demonstrate "extraordinary and compelling reasons" to justify his early release.

Congress has not further defined "extraordinary and compelling." But the commentary to U.S.S.G. § 1B1.13, adopted before the enactment of the First Step Act, does. Application Note 1 identifies the following "extraordinary and compelling" circumstances: (A) terminal illness diagnoses or serious medical, physical, or mental impairments from which a defendant is unlikely

to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least 10 years or 75 percent of his sentence; or (C) family related circumstances. U.S.S.G. § 1B1.13 cmt n.1(A)–(C). Then there is a catch-all in section (D), titled "Other Reasons." That section provides that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt n.1(D).

District courts across the country have grappled with whether they can find extraordinary and compelling reasons for compassionate release under subdivision (D) given the prefatory language that suggests the issue is to be determined by the "Director of the Bureau of Prisons." But as another court in this Circuit has explained, the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, "is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." *United States v. Young*, No. 00-cr-00002, 2020 U.S. Dist. LEXIS 37395, at *15 (M.D. Tenn. Mar. 4, 2020). And "[a]lthough it does not appear that any federal circuit court of appeals has addressed this issue, a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons." *Id*. at *16.

Bradley believes that a combination of his medical condition, family tragedies, and RDAP suspension create the requisite extraordinary and compelling circumstances entitling him to compassionate release. The Court disagrees.

*Medical Condition*:  Bradley claims that his 2013 "gunshot wound to the cheek causes nasal drainage problems, which makes [him] more susceptible to infection" and which has gone

untreated at Milan. (ECF No. 137, PageID.779.) But even Bradley questions whether this is an "extraordinary and compelling" reason for release. (ECF No. 137, PageID.783.) He is right to equivocate.

Bradley's prison medical records indicate that he does receive treatment when he complains of pain or nasal congestion (allergic rhinitis) caused by the prior gunshot wound. (ECF No. 144.) There is no indication of any nasal infection problems that would create a risk of serious complications from COVID-19. (*Id.*) And this is not a condition identified by the Centers for Disease Control and Prevention (CDC) as putting someone at increased risk for severe illness from COVID-19. Centers for Disease Control and Prevention, "Coronavirus Disease 2019 (COVID-19), People of Any Age with Underlying Medical Conditions," https://perma.cc/7BQG-Z2R3 (last accessed July 20, 2020); *see also United States v. Galka*, No. 16-20254, 2020 U.S. Dist. LEXIS 105701, at *6–7 (E.D. Mich. June 17, 2020) ("Though Defendant argues that his sinus collapse causes him breathing problems and difficulty sleeping, these unfortunate structural sinus issues are distinct from the lung and asthmatic conditions flagged by the CDC as indicators of at-risk individuals."). That alone distinguishes the two cases cited in Bradley's supplement in which, as conceded by the government, the inmates had underlying medical conditions identified by the CDC as putting them at higher risk of illness from COVID-19. (ECF No. 142-2 and 142-3.) Here, Bradley's speculative concern about catching COVID-19 is not enough. *See United States v. Raia*, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) ("[A] generalized risk of contracting COVID-19 and potentially

6

developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission.").

*Family Circumstances*: Sadly, Bradley's brother and cousin have died while Bradley has been incarcerated. (ECF No. 137, PageID.780.) This is on top of the fact that his father is long-deceased, his mother and sister are disabled, and he has two brothers who are also incarcerated. (*Id.*) This has understandably caused Bradley emotional distress and a desire to be with his family. (ECF No. 137, PageID.769.). But that does not make him unique. These are life tragedies common to many inmates and not what the Sentencing Commission defined as extraordinary and compelling reasons for release. Rather, the Commission identifies only "The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt n.1(C). While difficult, Bradley's family circumstances are not so extraordinary and compelling as to warrant immediate release. *See United States v. Schnabel*, No. 17-cr-169, 2020 U.S. Dist. LEXIS 115970, at *12 (S.D. Ohio, July 1, 2020) (recognizing that "incarceration of many inmates poses a hardship to their families" and such hardship is not an extraordinary circumstance); *United States v. Turner*, No. 16-cr-192, 2020 U.S. Dist. LEXIS 97896, at *8 (D.N.D. June 4, 2020) ("The desire to be home with one's family does not constitute 'extraordinary and compelling reasons' that would warrant a sentence reduction.").

*Other Reasons*: Bradley could still be entitled to relief if he has "an extraordinary and compelling reason other than, or in combination with" his medical and family conditions.  U.S.S.G. § 1B1.13 cmt n.1(D). Bradley points to "the extremely unfair circumstances surrounding the denial of [his] early release through RDAP because of the COVID-19 problems." (ECF No. 137,

PageID.783.) "Simply put," says Bradley, "the loss of an avenue to freedom, after putting in over 400 classroom hours of education, etc., coupled with the loss of two, supporting and close relatives, must be either extraordinary or compelling reasons, if not both." *Id.*

But Bradley is overlooking the fundamental purpose of RDAP. As the Government explains, RDAP is "the BOP's most intensive drug abuse treatment program" and its participants "are significantly less likely to recidivate and less likely to relapse to drug use than non-participants and make a significant difference in the lives of offenders following their release from custody and return to the community." (ECF No. 143, PageID.835, 836–837.) That is why inmates who successfully complete the program can be considered for early release. But it is by no means a guarantee. It is within the discretion of the BOP whether to release an RDAP graduate early. As the statute authorizing this early release states, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B) (emphasis added).

Bradley has about one-fifth of the program remaining. The Government advises that a BOP official has confirmed RDAP classes are resuming in a very limited fashion. (ECF No. 143, PageID.836.) That the delay in Bradley's completion of the program may have delayed an earlier transition to an RRC is no different from the situation experienced by many inmates enrolled in the program. Even combined with Bradley's family losses, the suspension of RDAP is not an extraordinary and compelling circumstance warranting a sentence reduction.

Thus, the Court does not need to consider whether Bradley poses a danger to the community or the factors set forth in 18 U.S.C. § 3553(a).

8

### III.

Finding no extraordinary and compelling reason to reduce Bradley's sentence, his motion for compassionate release is DENIED.

Dated: July 21, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE